UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JUDGE ALSTON,**<br><br>    **Defendant.** | Case No. 25-MJ-00142 (MAU) |

**EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE**
**AND *DE NOVO* REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge Moxila A. Upadhyaya issued on August 20, 2025. The Government first requests that the Court stay Magistrate Judge Upadhyaya's order releasing the Defendant. The Government further requests that the Court grant a *de novo* review of Magistrate Judge Upadhyaya's denial of the Government's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and under 18. U.S.C. § 3142(f)(1)(D) (Recidivist). This Court has the authority to grant a stay to consider this emergency *de novo* review of the Magistrate Judge's order of release.

The Defendant stands before this Court charged with illegally possessing a handgun with eleven rounds of ammunition despite having two prior federal drug trafficking convictions, the second of which was committed while on supervised release for the first conviction. This prior history of criminal convictions and noncompliance puts the community at risk. Pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

1

## *The Instant Offense*

On August 12, 2025, at approximately 21:30 hours, investigators with the United States Marshals Service (USMS) operating as part of the Executive Order 14252 Task Force were conducting high-visibility law enforcement operations in the area of the 3500 block of East Capitol Street NE, Washington, DC. USMS Senior Inspector (SI) Edward Bruton observed a black in color 2006 Chevy 300 sedan bearing Virginia License Plate UMJ6659 "double parked" along the 3500 block of East Capitol Street NE, Washington, DC. A query of the vehicle license plate conducted through the Washington Area Law Enforcement System (WALES) revealed the registrant of the vehicle to be Alston, Judge (DOB: 03/23/1969). The vehicle appeared to be off and occupied by solely by an individual in the driver's seat of the vehicle. The vehicle did not have any exterior lighting activated.

SI Bruton alerted other investigators of the USMS of the presence of the vehicle. USMS investigators were driving unmarked government vehicles equipped with emergency lights and sirens and dressed in casual clothing with outer ballistic vests bearing "Police" and "US Marshal" identifiers and insignia.

SI Bruton activated his emergency lights and approached the vehicle to make contact with the driver. The driver informed SI Bruton and SI Dugan he was waiting for someone from the building. Investigators requested the driver's identification, and the driver provided investigators with a D.C. Identification Card. The Defendant was sitting in the driver's seat of the vehicle with the keys to the vehicle in the ignition. There were no other occupants of the vehicle. The Defendant informed investigators that he did not possess a valid driver's license. The Defendant was asked to exit the vehicle, and SI Bruton conducted a pat-down frisk of the Defendant for the safety of officers on-scene.

Investigators requested consent to search the vehicle, and the Defendant verbally consented to the search. During a search of the vehicle, investigators discovered a black Taurus 24/7 G2C semiautomatic pistol .45 ACP with Serial Number NH023951 in the center console of the vehicle. The pistol contained one (1) round of ammunition in the chamber of the firearm and ten (10) rounds of ammunition in the magazine. The magazine had a total capacity of ten (10) rounds of ammunition.



The Defendant has a prior felony conviction in the United States District Court for the District of Columbia in Case Number 14-cr-113-RMC for Unlawful Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), an offense punishable by more than one year of imprisonment. ALSTON received a sentence of 60 months of incarceration.

*Defendant's Criminal History*

As previously stated, the Defendant has two prior federal convictions for Unlawful

3

Possession with Intent to Distribute Cocaine. Most recently, the Defendant was convicted of the offense in Case Number 14-cr-113 (RMC) and sentenced to 60 months of incarceration. According to the proffer of evidence agreed to by the Defendant, on March 25, 2014, officers executed a search warrant in the target residence, and found 53 zips of cocaine base in a false bottom can and a second bag containing cocaine base which contained a reserve weight of 47.5 grams in the Defendant's bedroom. ECF 11.

Notably, the Defendant committed this offense while on supervised release for a prior conviction in Case Number 04-cr-437 (BAH) for Unlawful Distribution of Cocaine Base within 1,000 Feet of a School, in violation of 21 U.S.C. §§ 860(a), 841(a)(1) and (b)(1)(C). Because of the re-offense, the Defendant's supervised release was revoked, and he was sentenced to fifteen (15) months of incarceration.[1]

Regarding the offense of conviction in Case Number 04-cr-437, the proffer of evidence agreed to by the Defendant stated that the Defendant sold crack cocaine to an undercover police officer on five occasions between May 31, 2002, and July 9, 2002. ECF 12. Each of the transactions occurred approximately 568 feet from a junior high school. *Id.*

## RGUMENT

**I.  This Court Has the Authority to Grant the Motion to Stay Release Pending a *De Novo* Review**

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody

---

[1] As a result of this revocation, both of the Defendant's prior criminal convictions count towards the Defendant's criminal history category. U.S.S.G. § 4A1.2(e)(1).

4

pending further legal proceedings, the absence of stay authority could render the district court's review power illusory."). An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained. *Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No.: 2:23-cr-00044-GMN-VCF, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, "stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision." (Resp. 3:9-24) (collecting cases). Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.").

The government is aware of the Honorable Magistrate Judge Zia M. Faruqui's recent decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025). Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending the government's request for *de novo* review of the Magistrate Judge's release order, that the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009). The government, however, is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay to present the merits of the requested detention to the district court judge.

Thus, the government seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors. As this Circuit has noted, "[t]he purpose

5

of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004). Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia. *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024). As these courts have recognized, the "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

## II. *De Novo* Review of the Magistrate's Release Order

As an initial matter, a defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Further, Title 18, U.S.C. § 3145(a) states:

   **(a) Review of a release order** – If a person is ordered released by a magistrate, …

6

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[2]

---

[2] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts

7

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendant's appearance at future proceedings.

A.     **The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying a significant penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence is convincing that the Defendant carried a loaded firearm in the center console of his vehicle. He was the only one in the vehicle and was seated in the driver's seat with the keys in the ignition. The firearm was readily

---

the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

8

accessible to the Defendant, being positioned right next to the driver's seat, and it had a chambered round with an additional ten rounds in the magazine. Here, there is no indication that the weapon was inert or otherwise inoperable.

In its holding, the Magistrate Court found that though the defendant is charged under 18 U.S.C. § 922(g), the nature and circumstances of this offense contained less indicia of dangerousness because the firearm was not brandished, nor did the Defendant flee or resist arrest with the firearm. However, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, inherently poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when Defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a Defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm recovered from the Defendant had many of these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession is so

problematic, especially by someone with the Defendant's criminal history, because of the number of violent gun crimes committed in the District.

### B. The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government's case against the Defendant is strong.[3] First, officers approached the Defendant's vehicle due to being double-parked. The Defendant was in the driver's seat of the vehicle with the keys in the ignition. Nobody else was in the vehicle, which records show was registered to him, and he informed officers that he was waiting for someone in the adjacent building. Officers asked for the Defendant's license, he provided a District of Columbia identification card, not a license, and the Defendant admitted he did not have a license. At this point, the officers had probable cause to arrest the Defendant for No Permit under D.C. Code § 50-1401.01(d). Officers requested that the Defendant step out of the vehicle to complete the traffic stop. *See Maryland v. Wilson*, 519 U.S. 408. Officers then asked for permission to search the vehicle, and the Defendant gave his consent.

---

[3] The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] Defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Officers commenced searching the Defendant's vehicle and found in the center console a loaded firearm immediately adjacent to where the Defendant had been seated. "If the evidence against a Defendant is overwhelming, credible, helpful, and important to the government's case in chief that may increase the risk that Defendant will flee to avoid future court proceedings and may indicate that the Defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that the Defendant will present a danger to the community if released.

    **C.**    **The Defendant's History and Characteristics Merit Detention.**

The third factor, the Defendant's history and characteristics weigh in favor of detention. The Magistrate Court found that the Defendant's history and characteristics weighed in favor of release due to the age of the Defendant's two prior convictions, his satisfactory completion of supervised release in his most recent conviction, and that he is fully employed living in an apartment without any financial assistance.

However, the Defendant has been on supervised release twice. The first time, in Case Number 04-cr-437 (BAH), the Defendant's supervised release was revoked pursuant to a new arrest for similar conduct. This rearrest resulted in a subsequent federal conviction. After revocation in this matter, the Pretrial Services Report indicates that no further term of supervised release was imposed.

Because of these convictions, the defendant clearly knew he was prohibited from possessing a firearm. The Defendant, who is in his mid-50's, is not a young man. It cannot be said that the conduct charged in this case was the product of youthful indiscretion or an impulsive lapse

of judgment. The Government submits that the the Defendant made the considered decision to illegally arm himself despite the prohibition against such conduct. This represents a serious escalation in conduct from his prior convictions which were drug offenses that did not involve the use of firearms.

Given this checkered history of compliance with court conditions, Pretrial Services has noted, and the Government agrees, that no condition or combination of conditions can reasonably assure the Defendant's appearance or safety to the community. Accordingly, this factor weighs in favor of detention.

### D.    The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the Defendant's release, weighs in favor of detention. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to the public."). Add to this the Defendant's previous unwillingness to abide by his conditions of supervised release, the Court is therefore presented with an individual who is a danger to the citizens living within the District.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the

community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). Here, where the Defendant possessed a loaded firearm within easy access while driving his vehicle, he posed an obvious and articulable threat to the community. Therefore, this factor also weighs in favor of detention.

### III. The Magistrate Court's Third-Party Custodian does not mitigate the danger posed by the Defendant

At the detention hearing, the Court heard testimony from the mother of six of the Defendant's six children. The Government does not contest that the witness testified credibly regarding her intent to comply with the Court's requirement to report any violations of the Defendant's release conditions, However, the conditions imposed by the Court do not adequately mitigate the danger to the community posed by the Defendant.

The Defendant was released with GPS monitoring, a curfew, a prohibition against using any vehicle, and a directive not to possess narcotics or firearms. However, the Defendant will be living alone, and the third-party custodian is only required to come to the Defendant's once per week to search for contraband. It is readily foreseeable how these conditions could be subverted through no fault of the third-party custodian, who is not a law enforcement officer trained to search for contraband, and who would presumably be giving the Defendant notice of her arrival prior to doing the search. Given the allegations in this case and the Defendant's checkered history of

13


compliance[4], the Government would submit that this third-party custodian arrangement is not sufficient to mitigate the Defendant's dangerousness to the community.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   s/ Travis Wolf
      TRAVIS WOLF
      Assistant United States Attorney
      NY Bar No: 5483243
      United States Attorney's Office
      601 D Street, NW
      Washington, D.C. 20530
      Telephone: 202-803-1670
      Travis.Wolf@usdoj.gov

---

[4] The Government would point out that relating to the Defendant's second drug conviction, officers found drugs concealed in the false bottom of a container.